UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:16-cr-00046-GMN-PAL |
| vs. ) | |
| ) | **ORDER** |
| TODD C. ENGEL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is Defendant Todd C. Engel's ("Defendant's") Motion for New Trial, (ECF No. 3183). The Government filed a Response, (ECF No. 3198), and Defendant filed a Reply, (ECF No. 3204). Additionally, the Government filed a Sur-Reply, (Ex. A to Motion for Leave to File, ECF No. 3210-1).[1] For the following reasons, the Court denies Defendant's Motion.

## I.  BACKGROUND

On March 2, 2016, a federal grand jury sitting in the District of Nevada returned a Superseding Indictment charging nineteen defendants with sixteen counts related to a confrontation on April 12, 2014, with Bureau of Land Management ("BLM") Officers in Bunkerville, Nevada. (ECF No. 27). Defendant was grouped with Tier 3 defendants and was part of the first group of defendants that went to trial. (Order, ECF No. 1098). At the conclusion of Defendant's trial, the jury found Defendant guilty of Count Twelve, Obstruction of the Due Administration of Justice, and Count Sixteen, Interstate Travel in Aid of Extortion. (Jury Verdict, ECF No. 1903).

---

[1] On April 23, 2018, The Court granted the Government's Motion for Leave to File Sur-Reply. (*See* Order, ECF No. 3233).

Subsequent to Defendant's trial, the Tier 1 defendants proceeded to trial. (Order, ECF No. 1098).  On December 20, 2017, the Court declared a mistrial for the Tier 1 defendants, finding that the Government's failure to disclose evidence to the Tier 1 defendants resulted in numerous *Brady* violations. (Mins. of Proceedings, ECF No. 3041).  Following the Court's declaration of mistrial, the Court found that dismissal with prejudice was necessary. (Mins. of Proceedings, ECF No. 3116).

In the instant Motion, Defendant requests that the Court vacate his conviction and grant a new trial on the grounds that his trial "was the product of numerous Brady [sic] violations, prosecutorial misconduct, withholding exculpatory evidence, and in the alternative may not be maintained under the plain language of the statues upon which the charges are based." (Mot. for New Trial 2:5–13, ECF No. 3183).

## II.       LEGAL STANDARD

Federal Rule of Criminal Procedure 33 provides, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  A motion for new trial based on new or newly discovery evidence must be filed within three years after the verdict. Fed. R. Crim. P. 33(b)(1).  Although determining whether to grant a motion for a new trial is left to the district court's discretion, "it should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (internal quotation omitted).  Moreover, the defendant bears the burden of persuasion. *United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989).

"A defendant who seeks a new trial based on new or newly discovered evidence must show that (1) the evidence is newly discovered; (2) the failure to discover the evidence is not attributable to a lack of diligence by the defendant; (3) the evidence is material to the issues at trial; (4) the evidence is neither cumulative nor impeaching; and (5) the evidence indicates that

a new trial would probably result in an acquittal." *United States v. Waggoner*, 339 F.3d 915, 919 (9th Cir. 2003) (citing *United States v. Jackson*, 209 F.3d 1103, 1106 (9th Cir. 2000)).

"Evidence will not be deemed 'newly discovered' simply because it appears in a different light under a new theory. [A] party who desires to present his case under a different theory in which facts available at the original trial now first become important, will not be granted a new trial." *United States v. Hamling*, 525 F.2d 758, 759 (9th Cir. 1975).

### III.      DISCUSSION

#### A. Insufficient Evidence

Defendant argues that the charges he was convicted of at trial cannot be sustained based on the statutes' requirements. (Mot. for New Trial 8:1–2, ECF No. 3183). Specifically, Defendant claims that the facts do not support a conviction under Count Twelve charging Obstruction of the Due Administration of Justice in violation of 18 U.S.C. §1503 because "the execution of a court order is not included in the clear and explicit language of the statute, . . . none of the officers, agents, or law enforcement officers, present that day or involved with the matter were the persons identified by the statute," and "none of the alleged victims were, or are the parties which were meant to be protected by the statute." (*Id.* 9:1–8). Additionally, Defendant argues that his conviction under Count Sixteen charging Interstate Travel in Aid of Extortion in violation of 18 U.S.C. §1952, "specifically relates to an intent to commit any crime of violence to further any unlawful activity, which was never proven at trial." (*Id.* 9:25–26).

The Court finds that Defendant's arguments regarding insufficient evidence are time-barred. Pursuant to Federal Rule of Criminal Procedure 33, "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2); *see* Fed. R. Crim. P. 29(c)(1) ("A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later."). Here, the jury

returned its verdict on April 24, 2017, and more than nine months later Defendant filed the instant Motion on February 8, 2018. (*See* Jury Verdict, ECF No. 1903).  Accordingly, Defendant's arguments regarding insufficient evidence are untimely.

### B. Newly Discovered Evidence

Defendant claims that eleven newly discovered pieces of evidence warrant a new trial: (1) BLM operation plan, (2) 2012 BLM threat assessment, (3) an unspecified BLM threat assessment, (4) BLM intelligence packet, (5) BLM law enforcement operation order, (6) Southern Nevada Counter Terrorism threat assessment, (7) TOC Activity log, (8) email chain regarding snipers and Dan Love's state of mind  about being a warrior and going into combat, (9) Map of sniper positions, (10) Wooten memo, and (11) Las Vegas Metropolitan Police Department ("LVMPD's") withdrawal from the 2012 impoundment. (Reply 2:17–5:5, ECF No. 3204).  The Court will address Defendant's arguments for each piece of evidence in turn.

#### 1. BLM Operation Plan

Defendant contends that the BLM operation plan "goes to the underlying course of action, choice of deployment, and determination to place BLM and other officers deliberately in harms [sic] way by ignoring prudent tactical decisions, which was the cause of the apprehension and fear of the governments [sic] agents on the ground." (*Id.* 2:18–22). Defendant argues that suppression of this evidence "undermines the issue of extortion, and violence against governmental officers and agents, and addresses the depth and quality of contact that the parties had with each other," which in turn, denied Defendant "a  valid and effective defense to the claim of extortion, that would have  resulted in a different decision by the jury." (*Id.* 2:22–3:2).

The Government responds that "[t]he Operations Plan was not material because it could not have helped [Defendant] establish a 'valid and effective defense' to the extortion charge." (Sur-Reply 3:23–24, Ex. A to Motion for Leave, ECF No. 3210-1).  Further, the Government

points out that Defendant "cites no authority for his theory that a law enforcement officer's poor 'tactical decision' supports a 'valid' defense" to the extortion charge. (*Id.* 4:4–5).

The Court agrees that Defendant does not provide authority to support his position that ignoring prudent tactical decisions undermines the issue of extortion and provides a foundation for an effective defense against this charge. Because Defendant has failed to provide support for his position and specify how he was denied an effective defense, the Court is not persuaded that a new trial would probably result in an acquittal. The Court finds that this argument, as proffered by the Defendant regarding inclusion of the BLM operation plan at a new trial, does not present an exceptional case in which the evidence preponderates heavily against the verdict. *See Pimentel*, 654 F.2d at 545. Thus, Defendant has failed to meet his burden.

> 2. *BLM Threat Assessments, BLM Intelligence Packet, BLM Law Enforcement Operation Order, Southern Nevada Counter Terrorism Threat Assessment, TOC Activity Log, Email Chain, and Map*

Defendant claims that the following items: BLM threat assessments, BLM intelligence packet, BLM law enforcement operation order, Southern Nevada counter terrorism threat assessment, TOC activity log, email chain regarding snipers and Dan Love's state of mind about being a warrior and going into combat, and map of the sniper's positions "all contribute to the unnecessary/excessive use of force by law enforcement, the militarization of the round up, and establish the defense's position that it was the the [sic] goal of the government to instigate an armed confrontation with the protesters." (Reply 3:16–19). Additionally, Defendant states that this evidence "legitimize[s] the defense's assertion that the 'gun men' as [Defendant] has been described as being one of, were there to protect the protesters, thereby advancing the self-defense/defense of others theories which were dismissed by the [C]ourt." (*Id.* 3:20–23).

In its Response, the Government explains that it produced the BLM threat assessment to Defendant before trial. (Sur-Reply 4:11–12). The Government claims that the BLM intelligence packet "was not one of the documents on which the Court found a *Brady* violation in the Tier 1 trial, nor does this document contain any information about BLM's conduct." (*Id.* 4:27). Additionally, the Government argues that these documents "lack materiality because they were not otherwise relevant to [Defendant's] theory of self-defense or defense of others" because "the theory of self-defense is available to a defendant only when a law enforcement officer used excessive force," and the Court ruled that the evidence in this case did not establish excessive force. (*Id.* 4:21–5:2). Further, the Government avers that the "documents cannot be material if they do not support a legally cognizable defense." (*Id.* 4:18–19).

During Defendant's trial, the Court discussed the availability of the excessive force defense under *United States v. Span*, 970 F.2d 573, 576 (9th Cir. 1992). The Court explained that "the pointing of the weapon when people are not cooperating and obeying legitimate orders and directions to leave the area, to move back, and so forth, that could not be excessive force." (Trans. 26:18–21, ECF No. 2267). Because there were no "law enforcement officer[s] putting hands on any of the individuals, no attempts, no attempts to arrest, no batons used, [and] no violence," the Court could not find that it would be "subjectively reasonable to define the force used as being excessive or that there's any evidence that the jury could reasonably find that there was excessive force." (*Id.* 26:23–27:4). The withheld documentation of provocative conduct during the Tier 1 trial that concerned the Court was evidence that that applied specifically to Tier 1 defendants and was evidence of events or facts that took place before Defendant became involved on April 11, 2014. None of this new evidence involved the actions of Defendant or the officers that Defendant came into contact with on April 12, 2014.

Further, the undisclosed evidence of provocative conduct that the Court ruled might have supported a theory of self-defense in the Tier 1 trial, such that it was material to the

defense of the Tier 1 defendants and therefore should have been timely disclosed to them, does not automatically outweigh the overwhelming evidence that was presented against Defendant at his trial. Over an eleven-week trial, the Government introduced over 300 exhibits, called 35 witnesses, presented photographic and video evidence showing 470 individuals in the Wash and on the bridges overlooking the officers at their post. (Resp. 5:20–6:3, ECF No. 3198). Defendant was located on the "northbound bridge for at least an hour during this confrontation. The jury considered photos of him crouched behind the concrete barrier, his magazine inserted into his AR-15, his vest jammed with additional magazines loaded with ammunition, holding his weapon at the 'low ready' – showing he was ready to shoot." (*Id.* 7:7–11). After considering the evidence that was presented at trial and the arguments by Defendant Engel regarding the impact this new evidence would have if Defendant was granted a new trial, the Court finds that Defendant has failed to show that this new evidence probably would result in an acquittal at a new trial. Accordingly, this argument fails.

     3. *Wooten Memo*

Defendant claims that the Wooten memo would have provided him the "the opportunity to establish the incompetence, failure of command, failure to maintain effective policies, and the willingness to place officers in harms [sic] way as a means to an end to instigate violence and to oppress legitimate protest by the persons attending the rally or appearing in the wash." (Reply 4:3–11). If Defendant had the opportunity to expose what he calls "a culture of disregard, favoritism, and festering corruption" it is his position that this piece of evidence "would have changed the decision of the jury in favor of [Defendant]." (*Id.* 4:11–12).

The Government responds that the non-disclosure of the Wooten memo was not a *Brady* violation for two reasons. First, in light of the fact that the Government "received the memo on November 29, 2017, seven months after" Defendant's trial ended, there is no evidence that the Government suppressed the memo. (Sur-Reply 5:7–9). Second, Defendant "fails to show that

the information in the memo was material. [Defendant] says [ ] the Wooten Memo would have shown that the BLM 'instigate[d]' the violence during the impoundment. Again, instigation is not a legally cognizable defense, making the Wooten memo not material for this purpose." (*Id.* 5:10–13). Further, the Government argues that in order for the memo to be material, the memo "would need to identify a witness whom the information would have impeached, show how it would have impeached the witness, and show how the impeachment would have undermined confidence in the verdict." (*Id.* 5:17–19).

The Court finds that to the extent that the Wooten memo would be used for the purposes of impeachment, it does not satisfy the fourth *Waggoner* element which requires that the new evidence must be non-impeaching. *See Waggoner*, 339 F.3d at 919 (citing *United States v. Jackson*, 209 F.3d 1103, 1106 (9th Cir. 2000)) ("A defendant who seeks a new trial based on new or newly discovered evidence must show that . . . the evidence is neither cumulative nor impeaching"). Further, even if the Wooten memo or its author was introduced at trial for non-impeachment purposes, the extensive evidence against Defendant does not indicate that a new trial would probably result in an acquittal. *See United States v. Kenny*, 645 F.2d 1323, 1344 (9th Cir. 1981) (affirming a district court's denial for a new trial because the newly discovered evidence "lacked sufficient probative force to acquit"). The Government presented overwhelming evidence at trial that supports Defendant's convictions, including photographs and video of him during the April 12, 2014 incident, along with his admissions on internet postings.

*4. LVMPD Withdrawal from 2012 Impoundment*

Defendant argues that suppression of the information that the LVMP chose not to support the BLM "in or around 2012 . . . hindered defense's positions that the actions taken by [Defendant] and others were in support of keeping order and avoiding harm to all participants." (Reply 5:1–2). Defendant claims that had the jury known about the lack of support from the

LVMP in regards to the 2012 impoundment, "[t]he jury would have seen Engel as a positive force not as the violent individual depicted by the prosecution, and the end result would have been clear and substantively different in his favor." (*Id.* 5:2–5).

The Government points out that Defendant "does not identify any suppressed document that supports his claim." (Sur-Reply 6:8–9). The Government contends that "nothing about LVMPD's 2012 actions reveal anything about [Defendant's] 2014 intent-peaceful or otherwise. Indeed, LVMPD's 2012 actions do not make it any more or less likely that Engel traveled to Nevada for a legitimate purpose." (*Id.* 6:23–25).

The Court finds that this argument also fails to meet the *Waggoner* standard. Defendant has not identified specific newly discovered evidence or documentation in regards to LVMPD support in 2012. Further, the Court is not persuaded that this information is material to the issues at trial which involved events that took place in 2014. Therefore, Defendant has not shown that evidence exists that, if a new trial was granted, would result in acquittal.

The Court finds that the interest of justice does not require it to vacate the judgment and order a new trial.

> While the determination as to whether a new trial would be in the interest of justice is left to the Court's sound discretion, the Court should not 'set aside the verdict simply because it feels that some other result would be more reasonable. Even where errors occur, a new trial should be granted only if the moving party has shown that the error was substantial, not harmless, and that the error affected the defendant's substantial rights.'

*United States v. Bickle*, No. 2:10-cr-565-RLH-PAL, 2011 WL 5877486, at *1 (D. Nev. Nov. 22, 2011), *aff'd*, 566 F. App'x 589 (9th Cir. 2014) (quoting *United States v. Johnson*, 769 F.Supp. 389, 395–96 (D.D.C. 1991)). Here, the evidence is sufficient to sustain a conviction as to all counts for which the jury found Defendant guilty. Accordingly, Defendant's Motion is denied.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for New Trial, (ECF No. 3183), is **DENIED**.

**DATED** this __19__ day of July, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Court